

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS:PAS
F. # 2018R02301

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 13, 2019

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Michael Brogan
                  Criminal Docket No. 19-207 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in advance of the sentencing of defendant Michael Brogan ("Defendant Brogan"), which is scheduled for September 27, 2019 at 2:30 p.m. For the reasons stated below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines ("Guidelines") range as such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

      I.    Facts

      On December 4, 2018 at approximately 7:31 p.m., Defendant Brogan called the office of a sitting United States Senator ("the Senator") and recorded a voice-message threatening to assault and murder the Senator because of the Senator's criticism of the President and the Senator's position on reproductive rights. See Presentence Investigation Report ("PSR") ¶ 3. During the voice-message, Defendant Brogan stated the following:

> You listen very carefully. Stupid ass excuse. You call yourself a Senator, you're a piece of shit. You are an absolute piece of shit. Senator. Senator, and I put that in quotation marks [the Senator], you're a fucking phony. You watch your ass cause I [unintelligible], I'm going to put a bullet in ya. When I'm in D.C. and you're there, I got your fucking mark you stupid bitch. You and your constant lambasting of President Trump. Oh, reproductive

rights, reproductive rights. You know what? I'm cursing and I'm in sin because of people like you, ok? Cause I value the God given right to life. You are alive. You should thank our lord and savior Jesus Christ that you are alive. But instead, reproductive rights, reproductive rights. If I saw you, I'd snuff your stupid fucking ass. I'd put a fucking bullet in you. You watch your ass. If I see you on the streets, I'm gonna fucking light you up with fucking bullets. See Government Exhibit One – Redacted Michael Brogan Threat Recording.

On December 12, 2018, Special Agents from the United States Capitol Police ("USCP") executed a search warrant at Defendant Brogan's Brooklyn, New York home. PSR ¶ 4. Further forensic review of a wireless telephone found in Defendant Brogan's home uncovered that it was the phone used to call the Senator. Defendant Brogan was read his Miranda rights, which he waived, agreeing to speak without an attorney present. Id. He admitted to calling the Senator, but stated that he could not remember what he said in the voice-message. Id. He further stated that before leaving the voice-message he had watched a video on the internet of the Senator, which made mention of the Senator's criticism of the President of the United States as well as the Senator's views on reproductive rights. Id. Defendant Brogan stated that viewing the Senator's statements regarding these political views made him "very angry." Id.

In addition to reviewing Defendant Brogan's phone records, USCP special agents reviewed Defendant Brogan's social media information, which indicated that he had previously traveled to Washington, D.C. on at least two occasions. PSR ¶ 5. Specifically, Defendant Brogan had traveled to Washington, D.C. in January 2017 and January 2018 for the annual "March for Life." Id. Additional USCP investigation determined that the annual March for Life was scheduled to take place in January 2019 in Washington, D.C. Id.

After Defendant Brogan was arrested, charged by a criminal complaint and released, he agreed to an interview with a reporter for *The New York Daily News*. In reflecting on his voicemail, Defendant Brogan claimed, "[n]ot to trivialize it, I wish in retrospect I didn't do it, but I don't think it's that big."[1]

On May 24, 2019, Defendant Brogan pleaded guilty to a one count information charging him with Threatening to Assault and Murder a United States Official, in violation of 18 U.S.C. § 115(a)(1)(B). PSR ¶ 1.

---

[1] John Annese & Ellen Moynihan, Brooklyn man arrested after threatening to 'put a bullet in' U.S. senator for criticizing Trump, N.Y. DAILY NEWS, (Dec. 12, 2018, 6:40 PM), https://www.nydailynews.com/new-york/nyc-crime/ny-metro-brooklyn-man-arrested-threatening-us-senator-20181212-story.html.

II.     Sentencing Guidelines Calculation

As set forth in the PSR Defendant Brogan's offense level under the Guidelines is calculated as follows.

| | |
|---|---:|
| Base Offense Level (§ 2A6.1(a)(1)) | 12 |
| Plus: Victim Related Adjustment (§§ 3A1.2(a), 3A1.2(b)) | +6 |
| Less: Acceptance of responsibility (§ 3E1.1(a)) | -2 |
| Less: Acceptance of responsibility (§ 3E1.1(b)) | -1 |
| Total: | 15 |

Based on a total offense level of 15 and on a Criminal History Category of I, the combined estimated Offense Level and Criminal History Category carry an advisory Guidelines range of 18 to 24 months in custody. PSR ¶¶ 11-20, 56. While the PSR differs from the plea agreement's estimated range of 6 to 12 months, the government agrees with the Probation Department's application of the additional victim related adjustment in its calculation of the applicable Guidelines. Notwithstanding the plea agreement's language that the Guidelines estimate is not binding on the government, the Probation Department or the Court, the government respectfully submits that a sentence with the range of 6 to 12 months' imprisonment is nonetheless appropriate in this case for the reasons set forth below. See Plea Agreement ¶ 3.

III.    Discussion

   A.     Section 18 U.S.C. 3553(a) Factors.

Despite now being advisory, the Guidelines still provide useful guidance to the Court following United States v. Booker, 543 U.S. 220 (2005), and United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Although Booker held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," and the result of this calculation "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007).

Once the Guidelines range is established, a court imposing a sentence should consider the seven factors outlined in Title 18, United States Code, Section 3553(a): "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); the four legitimate purposes of sentencing, see id. § 3553(a)(2); "the kinds of sentences available," id. § 3553(a)(3); the Guidelines range itself, see id. § 3553(a)(4); any relevant policy statement by the Sentencing Commission, see id. § 3553(a)(5); "the need

to avoid unwarranted sentence disparities among defendants," id. § 3553(a)(6); and "the need to provide restitution to any victims," id. § 3553(a)(7). See Gall, 552 U.S. at 50 & n.6.

The statute also directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing mentioned in the second factor above. Sentences are imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In the present case, the government recommends a sentence that tracks the Guidelines because of the seriousness of the offense and the characteristics of the defendant, see id. § 3553(a)(1), as well as to provide sufficient specific and general deterrence to prevent future threats to government officials. see id. § 3553(a)(2)(B).

> B. *Defendant Brogan's Offense and the History and Characteristics Support a Guidelines Sentence.*

The factors set forth in 18 U.S.C. § 3553(a)(1)–both in terms of the specifics of the offense and Defendant Brogan's history and characteristics–weigh heavily in favor of a Guidelines sentence. The crime that Defendant Brogan committed is serious. His actions were not mere words, but instead a violent threat to shoot and murder another person based upon their beliefs. Defendant Brogan explicitly threatened to shoot and murder a sitting United States Senator because he disagreed with the Senator's criticism of President Trump and the Senator's pro-choice position on abortion. Rather than express his disagreement through non-violent speech or civic action, Defendant Brogan made a threat of violence designed to both intimidate and frighten the Senator. In short, Defendant Brogan believed that he was justified utilizing fear to infringe upon a public official's and, more generally, another American's bedrock right of freedom of expression.

The voice message also makes explicit reference to Defendant Brogan's potential travel to Washington, D.C., a fact that is made more alarming by a past social media post discussing a previous trip to the nation's capital and, as discussed above, a potential future trip to Washington, D.C. the next month. The use of threats of violence in order to prevail in political disputes in this country cannot be tolerated, and should be appropriately punished. Not only are Defendant Brogan's words alarming in their own right, but his criminal history, including multiple prior incidents where he appeared to have lost his temper, reveal that this is not an isolated loss of self-control. Specifically, in addition to the instant offense, Defendant Brogan has been arrested five times and has two prior convictions.

For example, on January 23, 1998, Defendant Brogan stated, "I'm not taking any fucking summons, I'm gonna kick your fucking asses" when an NYPD officer attempted to issue a ticket for failure to obey a red light. See PSR ¶ 22 and PSR Addendum. Defendant Brogan then hit the officer with his car door. Id. The officer's partner attempted to help and Defendant Brogan next kicked the second officer in the knee several times causing an injury.

Id.   Defendant Brogan was arrested for Felony Assault, Offenses Against Public Administration, Disorderly Conduct and Harassment. Defendant Brogan pleaded guilty to Resisting Arrest, a Class A Misdemeanor, and was sentenced to three years' probation and with 70 hours of community service. Id.

On November 18, 2004, Defendant Brogan was involved in an altercation in Brooklyn, New York following a traffic accident. PSR ¶ 23. In that case, after a Brooklyn woman struck his vehicle, Defendant Brogan, along with another man, went to her home and sought payment for the damage to his car. Id. While at the woman's home, Defendant Brogan got into an argument with the woman's husband—the victim—who then repeatedly asked Defendant Brogan to leave. Id. Defendant Brogan refused and threatened to throw the victim off the victim's porch. Id. Defendant Brogan then punched the victim in his eye, causing the victim to fall to the ground and bruising and swelling to the victim's head. Id. Defendant Brogan pleaded guilty to Attempted Assault in the 3rd Degree: with Intent to cause Physical Injury, a Class B Misdemeanor, in violation of Penal Law §§ 110.00, 120.00(1), and was sentenced to a conditional discharge with four days of community service. Id.

In addition to the two convictions discussed supra, Defendant Brogan has also amassed a number of arrests for conduct that did not result in criminal convictions, but further underscores an alarming trend of violent, impulsive behavior. One such instance occurred on April 15, 1997, in response to a temporary NYPD ticket agent (age 60) who was issuing a parking summons for Defendant Brogan's car. See PSR Addendum. As a result of the summons he began to yell at the female ticket agent. Id. He subsequently struck the ticket agent in the head causing her hat to fly off. Id. Defendant Brogan then entered his car and fled the scene, and was later arrested at his place of work.

In a separate incident on April 18, 2003, Defendant Brogan jumped a subway turnstile without paying the fare and when NYPD police officers asked for his identification he refused, threw his arms up and then struggled with the officers as they attempted to place him under arrest. See PSR Addendum. It is relevant to note that while Defendant Brogan's date of birth was provided to the police officers, the name listed on the arrest report was for Defendant Brogan's adult brother who does not travel outside of their home without assistance. Therefore, it is unlikely that Defendant Brogan's brother was involved, but instead that this is another instance involving Defendant Brogan's losing his temper.

It is clear that Defendant Brogan has struggled over the past twenty years to control his anger. More importantly, he has not been deterred by past arrests or even his prior convictions with past opportunities at alternatives to incarceration. For example, on two separate occasions Defendant Brogan was given opportunities at either a conditional discharge or probation, but he still continues to threaten others. PSR ¶¶ 22-23. Moreover, Defendant Brogan's statement that ". . . . I don't think it's that big . . . ." is alarming as he does not grasp the harm he caused in the instant offense.[2] This statement coupled with the fact that while the

---

[2]   John Annese & Ellen Moynihan, Brooklyn man arrested after threatening to 'put a bullet in' U.S. senator for criticizing Trump, N.Y. DAILY NEWS, (Dec. 12,

5

instant federal case was pending on at least two occasions, Defendant Brogan was verbally abusive towards his supervising Pretrial Services officer is disturbing. Id. ¶ 2. For example, on January 24, 2019, the supervising officer contacted Defendant Brogan to speak about his schedule, and he expressed his frustration and anger over his inability to leave his residence at will. Id. Defendant Brogan informed the supervising officer that he needed to run his errands and being confined to the residence is "ridiculous." Id. The supervising officer explained, again, his release conditions require him to be at home unless he is given an approved schedule. He was told an errand schedule can be given and he will need to provide Pretrial Services with a specific day he would like to have. Id. Defendant Brogan proceeded to get more upset yelling "fuck your rules" and "fuck you." Id. The supervising officer warned Defendant Brogan about his tone and strongly suggested that he refrain from using belligerent terms as it can be taken as a threat. Id. Defendant Brogan continued to be upset, and the supervising officer disconnected the call. Id. Finally, during a separate required pretrial release counseling session, Defendant Brogan stated that it was, "nonsense having to be at home at an arbitrary time," and he did not seem to understand how his failure to comply with the rules of supervision can affect him. Id. ¶ 39. The counselor reported that as of April 23, 2019 Defendant Brogan had very little insight into instant offense. Id. The fact that Defendant Brogan evidenced very little insight into the instant offense underscores a need for specific deterrence in this case.

    C.    *Providing Sufficient General Deterrence.*

As United States District Court Judge John Woodcock remarked when sentencing a defendant for threatening the life of United States Senator Susan Collins and her staffer in 2009, "debate must remain vigorous, but people must stop assuming that those who disagree with them are less patriotic or love this country less than they do."[3] As outlined supra, the actions of Defendant Brogan fall far outside of the confines of vigorous debate, but instead reflect an alarming trend of threats to government officials. Such a trend supports the need for a Guidelines sentence based on general deterrence. See 18 U.S.C. § 3553(a)(2)(B).

The need for general deterrence to prevent further threats against other public officials is illustrated by three 2019 examples of threats against public officials. In one instance law enforcement officials in the Western District of New York arrested and charged a man for

---

2018, 6:40 PM), https://www.nydailynews.com/new-york/nyc-crime/ny-metro-brooklyn-man-arrested-threatening-us-senator-20181212-story.html.

    [3]    Judy Harrison, Illinois Man Sentenced for Threatening Sen. Collins, Staffer, BANGOR DAILY NEWS, (Aug. 26, 2012, 5:03 PM), https://bangordailynews.com/2010/08/26/politics/illinois-man-sentenced-for-threatening-sen-collins-staffer/

threatening to assault and murder United States Congresswoman Ilhan Omar.[4]  A few weeks after that threat, a Florida man was arrested for making similar threats against United States Congressman Eric Swalwell and United States Senator Cory Booker, among others.[5]  As recently as June 4, 2019, United States Circuit Judge Joseph F. Bianco sentenced a man to an 18 month sentence for threatening to kill two senators.[6]  As these examples demonstrate there is a real need for general deterrence in response to threats against public officials.

---

[4]  Press Release, Stuben County Man Arrested, Charged With Threatening to Kill a U.S. Congresswoman (April 5, 2019), https://www.justice.gov/usao-wdny/pr/steuben-county-man-arrested-charged-threatening-kill-us-congresswoman.

[5]  Press Release, Tamarac Resident Arrested For Making Multiple Threats to Members of Congress, (April 19, 2019), https://www.justice.gov/usao-sdfl/pr/tamarac-resident-arrested-making-multiple-threats-members-congress.

[6]  Press Release, Long Island Man Sentenced to 18 Months Imprisonment for Threatening to Assault and Murder Two United States Senators, (June 3, 2019), https://www.justice.gov/usao-edny/pr/long-island-man-sentenced-18-months-imprisonment-threatening-assault-and-murder-two-senators.

IV.     Conclusion

Given all of the foregoing, the Government respectfully requests that the Court impose a sentence within the applicable Guidelines range—a sentence that is sufficient but not greater than necessary to serve the legitimate purposes of sentencing, including and especially: to reflect the seriousness of the offense; promote respect for the law; and, perhaps most importantly here, afford adequate deterrence, both specific and general, in response to Defendant Brogan's actions.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   *Phil Selden*
Phil Selden
Assistant United States Attorney
(718) 254-6257

cc:   Clerk of the Court (NGG) (via hand delivered courtesy copy and ECF),
Michael Schneider, Esq. (via hand delivered and ECF),
Patricia Sullivan, Senior United States Probation Officer (via electronic mail and ECF).