

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KDE:PAS
F.#2018R02301

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 18, 2021

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Michael Brogan
     Criminal Docket No. 19-207 (NGG)

Dear Judge Garaufis:

  The government respectfully submits this letter in response to defendant Michael Brogan's ("Defendant Brogan") letter motion to modify his term of probation. See ECF Dkt. No. 29. For the reasons stated below, the victim ("the Senator"), the United States Probation Department and the government oppose Defendant Brogan's letter motion to terminate his probation early pursuant to 18 U.S.C. § 3564(c).

  I. Background

  On December 4, 2018, at approximately 7:31 p.m., Defendant Brogan called the office of the Senator and recorded a voice-message threatening to assault and murder the Senator because of the Senator's criticism of then-President Donald Trump and the Senator's position on reproductive rights. See Presentence Investigation Report ("PSR") ¶ 3. During the voice-message, Defendant Brogan stated the following:

> You listen very carefully. Stupid ass excuse. You call yourself a Senator, you're a piece of shit. You are an absolute piece of shit. Senator. Senator, and I put that in quotation marks [the Senator], you're a fucking phony. You watch your ass cause I [unintelligible], I'm going to put a bullet in ya. When I'm in D.C. and you're there, I got your fucking mark you stupid bitch. You and your constant lambasting of President Trump. Oh, reproductive rights, reproductive rights. You know what?

> I'm cursing and I'm in sin because of people like you, ok? Cause I value the God given right to life. You are alive. You should thank our lord and savior Jesus Christ that you are alive. But instead, reproductive rights, reproductive rights. If I saw you, I'd snuff your stupid fucking ass. I'd put a fucking bullet in you. You watch your ass. If I see you on the streets, I'm gonna fucking light you up with fucking bullets.

On December 12, 2018, Special Agents from the United States Capitol Police ("USCP") executed a search warrant at Defendant Brogan's Brooklyn, New York home. See PSR ¶ 4. Further forensic review of a wireless telephone found in Defendant Brogan's home uncovered that it was the phone used to call the Senator. Defendant Brogan was read his Miranda rights, which he waived, agreeing to speak without an attorney present. Id. He admitted to calling the Senator, but stated that he could not remember what he said in the voice-message. Id. He further stated that before leaving the voice-message he had watched a video on the internet of the Senator, which made mention of the Senator's criticism of President Trump as well as the Senator's views on reproductive rights. Id. Defendant Brogan stated that viewing the Senator's statements regarding these political views made him "very angry." Id.

In addition to reviewing Defendant Brogan's phone records, USCP special agents reviewed Defendant Brogan's social media accounts, which indicated that he had previously traveled to Washington, D.C. on at least two occasions. PSR ¶ 5. Specifically, Defendant Brogan had traveled to Washington, D.C. in January 2017 and January 2018 for the annual "March for Life." Id. Additional USCP investigation determined that the annual March for Life was scheduled to take place in January 2019 in Washington, D.C. Id.

After Defendant Brogan was arrested, charged by a criminal complaint and released, he agreed to an interview with a reporter for *The New York Daily News*. In reflecting on his voicemail, Defendant Brogan claimed, "[n]ot to trivialize it, I wish in retrospect I didn't do it, but I don't think it's that big."[1]

On May 24, 2019, Defendant Brogan pleaded guilty to a one count information charging him with Threatening to Assault and Murder a United States Official, in violation of 18 U.S.C. § 115(a)(1)(B). PSR ¶ 1. At the Defendant's sentencing hearing, the government requested a sentence within the range of the estimated United States Sentencing Guidelines ("U.S.S.G.") of 6 to 12 months' imprisonment based upon the nature and circumstances of the offense as well as additional Section 3553(a) factors, including the defendant's prior contact with the criminal justice system. See Plea Agreement ¶ 3.

---

[1] John Annese & Ellen Moynihan, Brooklyn man arrested after threatening to 'put a bullet in' U.S. senator for criticizing Trump, N.Y. DAILY NEWS, (Dec. 12, 2018, 6:40 PM), https://www.nydailynews.com/new-york/nyc-crime/ny-metro-brooklyn-man-arrested-threatening-us-senator-20181212-story.html.

On September 27, 2019, Defendant Brogan was sentenced to three years' probation with conditions including, but not limited to, home confinement for the first six months of his probation, that he not possess a firearm and/or ammunition, that he complete mental health counseling and treatment (including anger management), that he does not travel outside the five boroughs of New York and that he refrain from contacting the victim. See ECF Dkt. Nos. 26 and 27. Notably, as part of Defendant Brogan's conditions he currently meets weekly with a counselor to discuss anger management and coping strategies.

> II. Probation Department's Position

The government spoke with Defendant Brogan's United States Probation Officer who indicated that while the defendant has maintained his compliance with probation, at this time terminating probation is not appropriate. At this time, Defendant Brogan has been on probation for approximately 20 months, i.e., a little more than half of the previously imposed term. Therefore, the Probation Department opposes Defendant Brogan's request to terminate his probation.

> III. The Victim's Position

In response to Defendant Brogan's request to terminate his probation the government also contacted the Senator. The Senator made clear that she/he still thinks about Defendant's Brogan's threat, both on a personal level and also on behalf of her/his staff members. The Senator has also been deeply impacted by the rise of hate speech and violence throughout the United States, including attacks on elected officials. Set against this backdrop, the Senator objects to terminating Defendant Brogan's probation.

> IV. The Government's Position

The government also respectfully opposes terminating Defendant Brogan's probation. As set forth in the government's sentencing memorandum to the Court, as well as arguments at Defendant Brogan's sentencing hearing, the factors set forth in 18 U.S.C. § 3553(a)(1)–both in terms of the specifics of the offense and Defendant Brogan's history and characteristics–weigh heavily in favor of maintaining the defendant's period of probation. The crime that Defendant Brogan committed was serious. His actions were not mere words, but instead a violent threat to shoot and murder another person based upon their beliefs. Defendant Brogan explicitly threatened to shoot and murder a sitting United States Senator because he disagreed with the Senator's criticism of President Trump and the Senator's pro-choice position on abortion. Rather than express his disagreement through non-violent speech or civic action, Defendant Brogan made a threat of violence designed to both intimidate and frighten the Senator. In short, Defendant Brogan believed that he was justified utilizing fear to infringe upon a public official's and, more generally, another American's bedrock right of freedom of expression.

The voice message also makes explicit reference to Defendant Brogan's potential travel to Washington, D.C., a fact that is made more alarming by a past social media post discussing a previous trip to the nation's capital and, as discussed above, a potential future trip to Washington, D.C. the next month. The use of threats of violence in order to prevail in political disputes in this country cannot be tolerated, and should be appropriately punished. Not only are Defendant Brogan's words alarming in their own right, but his criminal history, including multiple prior incidents where he appeared to have lost his temper, reveal that this is not an isolated loss of self-control. Specifically, in addition to the instant offense, Defendant Brogan has been arrested five times and has two prior convictions.

For example, on January 23, 1998, Defendant Brogan stated, "I'm not taking any fucking summons, I'm gonna kick your fucking asses" when an NYPD officer attempted to issue a ticket for failure to obey a red light. See PSR ¶ 22 and PSR Addendum. Defendant Brogan then hit the officer with his car door. Id. The officer's partner attempted to help and Defendant Brogan next kicked the second officer in the knee several times causing an injury. Id. Defendant Brogan was arrested for Felony Assault, Offenses Against Public Administration, Disorderly Conduct and Harassment. Defendant Brogan pleaded guilty to Resisting Arrest, a Class A Misdemeanor, and was sentenced to three years' probation and with 70 hours of community service. Id.

On November 18, 2004, Defendant Brogan was involved in an altercation in Brooklyn, New York following a traffic accident. PSR ¶ 23. In that case, after a Brooklyn woman struck his vehicle, Defendant Brogan, along with another man, went to her home and sought payment for the damage to his car. Id. While at the woman's home, Defendant Brogan got into an argument with the woman's husband—the victim—who then repeatedly asked Defendant Brogan to leave. Id. Defendant Brogan refused and threatened to throw the victim off the victim's porch. Id. Defendant Brogan then punched the victim in his eye, causing the victim to fall to the ground and bruising and swelling to the victim's head. Id. Defendant Brogan pleaded guilty to Attempted Assault in the 3rd Degree: with Intent to cause Physical Injury, a Class B Misdemeanor, in violation of Penal Law §§ 110.00, 120.00(1), and was sentenced to a conditional discharge with four days of community service. Id.

In addition to the two convictions discussed supra, Defendant Brogan has also amassed a number of arrests for conduct that did not result in criminal convictions, but further underscores an alarming trend of violent, impulsive behavior. One such instance occurred on April 15, 1997, in response to a temporary NYPD ticket agent (age 60) who was issuing a parking summons for Defendant Brogan's car. See PSR Addendum. As a result of the summons he began to yell at the female ticket agent. Id. He subsequently struck the ticket agent in the head causing her hat to fly off. Id. Defendant Brogan then entered his car and fled the scene, and was later arrested at his place of work.

In a separate incident on April 18, 2003, Defendant Brogan jumped a subway turnstile without paying the fare and when NYPD police officers asked for his identification he refused, threw his arms up and then struggled with the officers as they attempted to place him under arrest. See PSR Addendum. While Defendant Brogan's date of birth was provided

4

to the police officers, the name listed on the arrest report was for Defendant Brogan's adult brother who does not travel outside of their home without assistance. Therefore, it is unlikely that Defendant Brogan's brother was involved, but instead that this is another instance involving Defendant Brogan's losing his temper.

It is clear that Defendant Brogan has struggled over the past twenty years to control his anger. More importantly, he has not been deterred by past arrests or even his prior convictions with past opportunities at alternatives to incarceration. In the instant case the Court showed the defendant leniency, downwardly varying from the applicable Guideline range and determining that a three-year term of probation was appropriate. As the Court concluded, the weekly counseling that the defendant receives that addresses anger management and coping mechanisms were appropriate measures in light of his serious conduct and criminal history. Were the defendant to be released early from his term of probation, he would not be obligated to continue to attend such sessions, which could in turn danger the community.

Moreover terminating his probation early would send a potential message for other would be individuals who intend to threaten elected officials. As such, Defendant Brogan's continued probation is appropriate to provide sufficient general deterrence. As United States District Court Judge John Woodcock remarked when sentencing a defendant for threatening the life of United States Senator Susan Collins and her staffer, "debate must remain vigorous, but people must stop assuming that those who disagree with them are less patriotic or love this country less than they do."[2] As outlined supra, the actions of Defendant Brogan fall far outside of the confines of vigorous debate, but instead reflect an alarming trend of threats to government officials.

Even if Defendant Brogan could highlight that his current probation conditions have a significant impact on his life, for example limiting his ability to find or maintain employment, which he does not, terminating his probation now would diminish the seriousness of his transgressions and undermine the goals of the original sentence. The Court's sentence was already a significant downward departure from his Guideline range (18 to 24 months in custody). PSR ¶¶ 11-20, 56.

---

[2] Judy Harrison, Illinois Man Sentenced for Threatening Sen. Collins, Staffer, BANGOR DAILY NEWS, (Aug. 26, 2012, 5:03 PM), https://bangordailynews.com/2010/08/26/politics/illinois-man-sentenced-for-threatening-sen-collins-staffer/

V. <u>Conclusion</u>

Given all of the foregoing, the Government respectfully requests that the Court maintain Defendant Brogan on his period of probation in order to serve the legitimate purposes of sentencing, including and especially: to allow for continued counseling sessions, to reflect the seriousness of the offense; promote respect for the law; and, perhaps most importantly here, afford adequate deterrence, both specific and general, in response to Defendant Brogan's actions.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By:   s/Phil Selden
Phil Selden
Assistant United States Attorney
(718) 254-6257

cc:   Clerk of the Court (NGG) (via ECF)
Michael Schneider, Esq.  (via ECF)

6